Filed 3/25/22  In re Natalie R. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Natalie R., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>AUDRA D.,<br><br>        Defendant and Appellant. | A162562<br><br>(City & County of San Francisco Super. Ct. No. JD19-3214) |

The San Francisco Human Services Agency (agency) filed a dependency petition on behalf of nine-year-old Natalie R. after receiving reports that she had been sexually abused by her stepfather.  Natalie was detained and placed with her father.  Following mediation and a contested dismissal hearing, the juvenile court dismissed the case and granted father sole physical and legal custody of Natalie.  Mother was granted supervised visitation and access to Natalie's education and health records.  On appeal, Audra D. (mother) challenges the award of sole legal custody to father.

1

In August 2019, the agency received two referrals alleging that Natalie, who was nine years old, had been sexually abused by her stepfather. Natalie told her godmother about the abuse, and her godmother took her to the police station and recorded her statement detailing the abuse. The agency recorded a forensic interview with Natalie in which she stated, without prompting, that stepfather touched her breasts and her buttocks multiple times. Further, stepfather told her that this was a secret. During the agency's investigation, Natalie reported that, two months earlier, she told her mother of the inappropriate touching and mother denied it occurred, did not alert authorities or leave the family home, and continued to allow the stepfather to be around Natalie. Mother reported that Natalie had a history of making up lies and said she was not sure what to believe. Natalie also reported that stepfather hit mother in the past. Natalie stated she would feel safe with mother if stepfather no longer lived in the home or if mother " 'install[ed] security cameras and Tasers' . . . ."

The agency filed a dependency petition alleging Natalie came within the provisions of Welfare and Institutions Code section 300, subdivisions (b)(1), (d) and (j).[1] The subdivision (b) allegations were based on both the

---

[1] Section 300 states, in relevant part: "A child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b)(1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . . [¶] . . . [¶] (d) The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by the child's parent

2

failure to protect Natalie from sexual abuse by stepfather and the history of domestic violence between mother and stepfather. The subdivision (d) allegation was based upon the failure to protect Natalie from sexual abuse by stepfather. The subdivision (j) allegation was based upon a separate petition regarding Natalie's maternal half sibling alleging neglect and/or abuse as to him.

Natalie was removed from mother's home and placed with her father, who lived with extended family members. Mother was granted supervised visitation. An agency social worker met with Natalie twice in September 2019. At the first meeting, when the social worker asked Natalie if she knew why she was now living with father, she said, " 'Because [stepfather] touched me.' " Two weeks later, Natalie told the social worker she " 'lied about [stepfather] touching me.' " When asked if someone told her to say that, Natalie quietly said " 'no' " and then said, " '[B]ut he did kiss my butt.' "

Following settlement negotiations, a second amended petition was filed alleging that Natalie was a child as described by Welfare and Institutions Code section 300, subdivision (b)(1) because: "The child, Natalie, is at risk of harm in that Natalie reported that she was inappropriately sexually touched by her stepfather, which Natalie later recanted. Natalie does not want to return home with her stepfather present. Further Natalie reported that her half-sibling, [Lorenzo D.], was present and witnessed the incident." (Capitalization omitted.)

---

or guardian or a member of the child's household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse. [¶] . . . [¶] (j) The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. . . ."

At the January 14, 2020, jurisdiction/disposition hearing, the parents submitted to the allegations of the second amended petition. The juvenile court declared Natalie a dependent and continued her placement with father. Family maintenance services were ordered for father. Mother was granted weekly supervised visitation and was permitted access to Natalie's medical, dental and school records, excluding mental health records.

A six-month review hearing was held on August 4, 2020. The juvenile court renewed dependency status for Natalie, continued her placement in father's home and continued family maintenance services for father.

In December 2020, the agency filed a dismissal report. The report stated that Natalie was thriving in father's home and that the social worker commented on her "newfound self-confidence . . . ." She was in good health and had completed medical and dental visits within the past six months. She also attended weekly mental health therapy sessions. Natalie had an individualized education plan (IEP) for an intellectual disability and speech impairment, and father participated in an IEP meeting in October 2020. Natalie struggled in school, particularly when distance learning began in 2020. Natalie did not participate in distance learning during the prior school year (from mid-March 2020 to the end of May 2020), but her resource teacher reported Natalie's attendance improved during the new school year. The agency reported that Natalie was very close to father and her extended family who live in her home. She also had a positive relationship with mother and her siblings. However, on multiple occasions, Natalie made it clear she did not want to have contact with stepfather. She continued weekly in-person visits with mother, which went well. The weekly virtual visits with mother were less consistent because Natalie did not always want to participate after a day of online schooling. Father reported to the social

4

worker that he and mother previously had many verbal altercations and they did not get along.

The agency reported that father's transition into the role of custodial parent was initially difficult because he lacked knowledge and parenting skills; however, while working with the agency for over 12 months, he had "grown tremendously" as a parent. The agency recommended that the dependency case be dismissed and that father be given full legal and physical custody. It also recommended that mother be granted "shared educational rights" and weekly supervised visitation.

After an unsuccessful mediation, the juvenile court scheduled a six-month review/dismissal hearing. The agency filed an addendum report on April 13, 2021, again recommending that the case be dismissed and that father be given sole legal and physical custody of Natalie and that mother be granted supervised visitation. The report explained that the Agency's concern about unsupervised visits with mother was because mother continued to live with stepfather and it was unclear whether mother believed Natalie's allegations of sexual abuse. The agency explained that it did not recommend joint legal custody because both parents reported they "do not see eye to eye" and have limited contact. Father reported to the agency that he believed conflict would occur between himself and mother if they disagreed about decisions pertaining to Natalie. However, he was willing to share information with mother regarding Natalie's health and education. Given the parents' history of disagreements, the agency did not believe shared legal custody was in Natalie's best interests.

At the contested dismissal hearing, the agency social worker testified that she continued to recommend dismissal with full legal and physical custody to father. She explained that she did not recommend unsupervised

visitation because mother is married to the perpetrator of the alleged sexual abuse and mother doubted the allegations. She further testified that because mother and father did not have a positive relationship and did not communicate, she believed it would be potentially harmful for them to have joint legal custody. She believed Natalie was aware that her parents did not get along and she was concerned about conflicts if they did not agree on educational decisions.

On cross-examination by mother's counsel, the social worker acknowledged mother was a proactive advocate for Natalie regarding her education. The social worker also acknowledged she had concerns about Natalie's not participating in online schooling, and she had spoken with Natalie, father, and Natalie's specialist teacher about her attendance. Mother had expressed concerns about Natalie's hygiene, and the social worker had discussed this with father and Natalie. The social worker also acknowledged that for a period of about a week she was unable to reach father because he was not responding to her. Father told the social worker that he felt overwhelmed at times. She explained to him that he needed to be available to the agency and to Natalie's school.

In response to questioning from the juvenile court, the social worker clarified that she believed mother was a great advocate for Natalie and should participate in Natalie's education, but because of mother and father's "tumultuous" relationship, she believed father should be given sole legal and physical custody. Counsel for father and counsel for Natalie agreed with the agency's recommendation.

The juvenile court dismissed the petition and granted legal and physical custody to father, with supervised visitation for mother. The juvenile court's order also states: "[M]other shall have access to medical,

6

dental and school records excluding mental health records. Mother is also permitted to participate and advocate for Natalie with her medical and educational providers."

## DISCUSSION

When a juvenile court terminates its jurisdiction over a dependent child, it is authorized to issue custody and visitations orders, which become part of any family court proceeding and remain in effect until they are modified or terminated by the family court. (*In re Chantal S.* (1996) 13 Cal.4th 196, 202–203.) The juvenile court "has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances" and focus on the child's best interests in making decisions regarding the child. (*Id.* at p. 201.)

We review the juvenile court's custody and visitation orders for abuse of discretion and will not disturb the order unless the juvenile court " ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " ' " (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) Under this standard, when two or more inferences reasonably can be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the juvenile court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*).)

Mother argues joint legal custody was in Natalie's best interests and, therefore, the juvenile court abused its discretion in ordering sole legal custody to father. Mother points to the social worker's testimony that mother was a proactive advocate regarding Natalie's educational needs; that father did not ensure Natalie participated in online schooling during the end of the 2019–2020 school year; that father was slow to enroll Natalie in Medi-Cal and dental care and that he delayed scheduling her health exams; that there

7

had been a concern about Natalie's hygiene; and that father " 'disconnected' " for a week because he felt overwhelmed. Mother also refers to school records stating Natalie continued to be absent or tardy to her online classes and that father delayed responding to Natalie's school regarding her IEP meeting.

Mother also argues that the agency's recommendations were not clear because its reports recommended shared educational rights and because at the hearing the agency's counsel inconsistently stated that the agency recommended sole legal and physical custody to father but also wanted mother and father " 'to both participate in the educational decisions . . . .' " To the extent there may have been any confusion about the agency's recommendation regarding educational decisionmaking, the record demonstrates the issue was clarified and the juvenile court, as well as the other parties, understood the agency to be recommending that father be given sole legal and physical custody. During closing argument, counsel for the agency clarified, "Do we want the mother to advocate for her child? Absolutely. We encourage her. She should do it. That is her responsibility. That will never change. Do we want one person making those final decisions? Absolutely. We are asking that the Court vest that power to the father."

The evidence mother references in support of her position that father should not have sole legal custody of Natalie does not warrant reversal. There was no dispute that father needed assistance from the agency when Natalie was initially placed with him and that he struggled to assist Natalie with online schooling during the COVID-19 pandemic. However, the social worker testified that father's parenting skills had improved greatly. Although father was initially slow to arrange for Natalie's healthcare and schedule her medical, dental, and therapy appointments, he did enroll her in

8

healthcare and took her to her appointments.  He also attended her IEP meeting.  Natalie's attendance in online school had also improved since the beginning of the pandemic.

Mother takes issue with the juvenile court's determination that there was a " 'clear distance [between the parents] that does not seem to be bridgeable.' "  She asserts that in the past she and father had been able to amicably resolve custody and child support issues in a separate family law case.  However, the agency's addendum report states both parents expressed that "they do not see eye to eye and have limited contact . . . ."  At the dismissal hearing mother's counsel conceded there was conflict between the parents, and mother's opening brief even acknowledges difficulty in her communications with father.

Mother has not demonstrated an abuse of discretion.  Although there may be evidence that could support an order for joint legal custody, this does not mean that the juvenile court abused its discretion by granting sole legal and physical custody to father.  (*Stephanie M., supra*, 7 Cal.4th at p. 318 [reviewing court has no authority to substitute its decision for that of the trial court when two or more inferences reasonably can be deduced from the facts].)  The social worker's testimony and the agency's reports include multiple references to conflict between father and mother and concerns that shared decisionmaking authority would not be in Natalie's best interest.  The juvenile court specifically referenced the conflict between the parents and its impact on Natalie in issuing its order, noting, "There has to be one family." Mother has not established that the juvenile court's order was arbitrary, capricious, or patently absurd.  (*Ibid.*)

## DISPOSITION

The order is affirmed.

_____

Jackson, P. J.


WE CONCUR:


_____

Simons, J.


_____

Needham, J.


A162562/*S.F. Human Services Agency v. Audra D.*